UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )    )   | |
| vs.                                              )   | CR 95-B-0337-NE |
|                                                      )   | CV 99-B-8002-NE |
| RALPH MARKLEY WILLIAMS,      )    )   | |
| Defendant.                               )   | |

## MEMORANDUM OPINION

This case is before the court on defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 104.)[1] Defendant alleges three grounds in support of his motion: (1) "Violation of the Double Jeopardy Clause," (2) Ineffective assistance of counsel," and (3) "Government violation of of plea agreement." (*Id*. at 4-5.) For the reasons set forth below, defendant's Motion is due to be denied.

## DISCUSSION

Defendant has the burden of showing he is entitled to relief from his sentence. *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978)(citing *Coon v. United States*, 441 F.2d

---

[1]The court notes that Williams's sentence expired during the processing of his Motion; however, this expiration does not moot his claims. *United States v. Brown*, 117 F.3d 471, 475 n.3 (11th Cir. 1997)(citing *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *Minor v. Dugger*, 864 F.2d 124, 127 (11th Cir. 1989); *Reed v. United States*, 471 F.2d 721, 722 (5th Cir. 1973)).

279 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971));[2] *see also Day v. United States*, 428 F.2d 1193, 1195 (8th Cir. 1969)("The petitioner bears the burden of proof upon each ground presented for relief in a Section 2255 proceeding."). He must prove "not merely that the errors [in the proceedings] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Based on its review of the record, the court finds defendant has not met this burden.

**A. VIOLATION OF THE DOUBLE JEOPARDY CLAUSE**

Defendant contends that he is entitled to relief from his sentence because it violated the Double Jeopardy Clause. (Doc. 104 at 4.) He states:

> In a contempt proceeding before the Honorable William M. Acker, Jr. in Case No. CV-95-U-667-NE, the instant Petitioner was sentenced to imprisonment for similar conduct that underlies the indictment returned in this case. The contempt proceeding and sentence was pre-instant indictment.

(*Id.*)

The Supreme Court has held:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

*United States v. Dixon*, 509 U.S. 688, 696 (1993)(citing *Brown v. Ohio*, 432 U.S. 161, 168-169 (1977); *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Gavieres v. United States*, 220 U.S. 338, 342 (1911)); *see Blockburger*, 284 U.S. at 304 ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . . 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'" (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871))), *quoted in United States v. Adams*, 1 F.3d 1566, 1572 (11th Cir. 1993).

According to defendant, he "was . . . imprisoned [by Judge Acker] as the result of contempt findings [that defendant violated] a Temporary Restraining Order [by] withdrawing $31,000.00 in alleged proceeds of the illegal scheme contrary to the court order prohibiting such." (Doc. 116 at 1.) The court notes that defendant was found in criminal contempt for violating a Permanent Injunction Order, not a TRO, which, inter alia, prohibited him from "utiliz[ing] or exercis[ing] dominion and control" over certain funds frozen by the injunction order. (Doc. 109, Attachment 2 at ¶ 6.; *United States v. Williams*, CV 95-S-0667-NE, doc. 44.) The essential elements of criminal contempt are a lawful court order that is reasonably specific, and defendant's willful violation of that order. *United States v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir. 1989).

In this case, defendant pled guilty to Count Six of the Indictment, which charged him with violating 18 U.S.C. 1343. Specifically, the indictment charged:

> On or about April 18, 1994, defendant
>
> RALPH MARKLEY WILLIAMS
>
> For the purpose of executing [a] scheme and artifice to defraud,[3] knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the sound of the human voice by telephone from the State of Alabama, to solicit monies by fraudulently offering cash prizes to James E. Umbarger in Kokomo, Indiana, and thereby inducing him to cause money to be paid by him to the defendant['s] criminal enterprise "Qualified Advertising" located in the Northern District of Alabama, all in violation of [18 U.S.C. § 1343].

(Doc. 1 at 9-10.) "The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003).

Clearly, criminal contempt and wire fraud contain different elements. *See Dixon*, 509 U.S. at 697 ("[T]he contempt prosecution was for disruption of judicial business[;] the same-elements test would not bar subsequent prosecution for the criminal assault that was part of the disruption, because the contempt offense did not require the element of criminal conduct, and the criminal offense did not require the element of disrupting judicial

---

[3] Defendant pled guilty to executing a telemarketing scheme, targeted at elderly people, to obtain money by means of misrepresentation from Umbarger. (Doc. 93 at 17-18, 30, 37-38.)

4

business.") Therefore, the Double Jeopardy Clause did not bar defendant's subsequent conviction for wire fraud.

Defendant's § 2255 Motion will be denied as to defendant's assertion that the Double Jeopardy Clause barred his conviction.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

The standards for evaluating defendant's claims of ineffective assistance of counsel are well settled:

> It is well established that the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668(1984), is the "controlling legal authority" to be applied to ineffective assistance of counsel claims. *Williams*, 529 U.S. at 406 (O'Connor, J., concurring). To succeed on a claim of ineffective assistance of counsel, the petitioner must show ***both incompetence and prejudice***. *Chandler v. United States*, 218 F.3d 1305, 1312 (11th Cir. 2000) (*en banc* ), *cert. denied*, 531 U.S. 1204 (2001). ***The petitioner's burden of demonstrating prejudice is high***. Under the prejudice prong, "[i]t is not enough for the defendant to show that the errors had ***some conceivable effect*** on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, the petitioner "must show that 'there is ***a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different***.'" *Chandler*, 218 F.3d at 1312-13 (quoting *Darden v. Wainwright*, 477 U.S. 168, 184 (1986)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Wellington v. Moore*, 314 F.3d 1256, 1260 (11th 2002)(emphasis added). In assessing the competence of defendant's counsel, the reviewing court "must keep in mind that '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004)(quoting *Strickland*, 466 U.S. at 689). The court –

5

must indulge a strong *presumption* that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the *presumption* that, under the circumstances, the challenged action might be considered sound trial strategy. This presumption is even stronger when the reviewing court is examining the performance of an experienced trial counsel.

*Crawford v. Head*, 311 F.3d 1288, 1297 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) and citing *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000)(*en banc*), *cert. denied*, 531 U.S. 1204 (2001))(internal citations and quotations omitted; emphasis added).

Defendant alleges that his counsel was ineffective in the following ways:

    1. "Counsel failed to address numerous viable sentencing issues on direct appeal especially some that were subject to counsel's objections to the P.S.I. report."

    2. "Counsel also failed to adequately advise the Defendant of the advantages and disadvantages and consequences of waiving the sentencing hearing as to the amount of loss applicable to the defendant for sentencing purposes."

    3. "Counsel failed to evidence knowledge of the law applicable to restitution by not realizing that an ex post facto violation had been committed by the sentencing court applying the amended version of the VWPA as opposed to the version in effect at the time of the occurrence of the offenses."

    4. "Counsel failed to provide effective assistance by recommending a plea concerning the use of $31,000.00 toward restitution when such was contrary to the law applicable to restitution. Counsel failed to appeal this issue."

(Doc. 104 at 4-5.)

The court notes that, at the time of defendant's guilty plea, defendant's counsel, Jim O'Kelley, was an experienced criminal defense attorney. Therefore, defendant must overcome a very strong presumption that O'Kelley's conduct fell "within the wide range of reasonable professional assistance." *Crawford*, 311 F.3d at 1297.

In his Reply, defendant argues that O'Kelley told him he could appeal the loss calculation used at his sentencing even if he waived an evidentiary hearing; therefore, he waived the hearing. (*See* doc. 116 at 3-6.) He contends, "However, contrary to [the] advice of counsel, on direct appeal the Eleventh Circuit refused to address the monetary loss calculation, stating that ' . . . Williams waived his objection to the PSI's loss calculation during the sentencing hearing . . . .'" (*Id*. at 3-4.) The Eleventh Circuit's Opinion states:

> On appeal Williams first contends that the district court erred in increasing his base offense level by 10 under U.S.S.G. §2F1.1(b)(K). He argues that the loss calculation should have been limited to the actual loss suffered by the victims [sic] in the charged count to which he pled guilty and should not have included the conduct relevant to counts dismissed pursuant to the plea agreement. Alternatively, he argues that, even assuming that consideration of relevant conduct was proper, the district court miscalculated and overstated the loss because the court assumed or speculated that every dollar of income from the telemarketing operation was fraudulently obtained.
>
> Notwithstanding this argument on appeal, however, Williams waived his objection to the PSI's loss calculation during the sentencing hearing. Where, as here, the defendant knowingly waives his objection, the plain error doctrine is inapplicable and the defendant is bound by the sentencing court's determination. We conclude that Williams waived his right to appeal his sentence on this ground.

*United States v. Williams*, No. 96-7143 at 1-2 (11th Cir. Jan. 15, 1998)(UNPUBLISHED)[4]

Defendant contends that he waived his right to a hearing after having a discussion with his attorney, in which he claims his attorney told him that he could appeal the loss calculation even if he waived his right to a hearing. According to the transcript of his sentencing hearing, the court told defendant that it "believed the loss to victims [of defendant's telemarketing scheme] was clearly over anything [that would] put him under a five year range," the maximum sentence. (Doc. 93 at 73.) The court also told defendant that it would not give him points for "acceptance" if he failed to prove the total loss was $2,000 or less, and that, if he showed a loss of $2,000 or less, his sentence would be 46-57 months, as compared to the maximum of 60 months. (*Id.* at 71, 80-81.) At this point in the sentencing hearing, the following occurred:

> THE DEFENDANT: Your Honor, I'm sorry for wasting the Court's time.
>
> THE COURT: You're not wasting my time, Mr. Williams. This is my job.
>
> THE DEFENDANT: – for even considering a downward departure on that. I don't want to proceed with that. I have accepted responsibiltiy whether you know that or not. . . .
>
> . . .

---

[4]A copy of the Eleventh Circuit's unpublished opinion can be found in the court's file at Document 101.

THE COURT: Let me say this: I'm not trying to get you to not challenge this. . . .

THE DEFENDANT: I'm tired. I don't want to challenge it. This has been going on – I've been sentenced for four years already as far as I'm concerned, and I've been here sixteen months. I'm tired. . . . I thought God had opened the door for me to go home, and it shut back on me again.

***So obviously, I'm doing something wrong, and I need to readjust my feeling, my responsibility and religion***, because the day I was called here, I didn't have a court date. I thought I was going home, that God had answered my prayers, and that I had fulfilled the things that he had asked me to fulfill, and I pray to him constantly all day long. And he has called me to preach the word. And I just – I hope that you know in your heart that that's true, that I do want to change. . . .

THE COURT: Let me say this: I want to make sure that you don't feel pressure to go ahead with this sentencing today. By withdrawing this objection, this means that you're facing the five year sentence.

THE DEFENDANT: I understand that. . . . The only reason why I even wanted to proceed with anything this morning was seeing that this had dropped it down to nine months to sixteen months. I didn't realize that – I thought the money factor had a big play in that, and that it was the whole play, and that was my only concern –

THE COURT: The money does have a big play in it. The money does.

THE DEFENDANT: ***If it's just a matter of a few months, Your Honor, then it's not worth wasting the Court's time.*** You have more important things to do.

THE COURT: Well, this is your decision. I'm not forcing you to go forward today.

9

> THE DEFENDANT: If it came down below two thousand dollars, I can't prove that unless the fact that they only indicted me on one count of four hundred and nineteen dollars. Why didn't they indict me for more than that —
>
> THE COURT: They did. They did, but as you well know, the indictment had – there was a plea bargain very advantageous to you because of the fact that the speedy trial had run.[5]
>
> THE DEFENDANT: Your Honor, I object to that. The actual indictment, fact, findings as far as dollar amounts that I had scammed people out of was four hundred nineteen dollars. I was not charged for Darryl Saunders['s] ten thousand dollars.
>
> THE COURT: Under the law, you are responsible for that if you were involved in it. That's the point. Under the law, you're responsible for that if you were involved in the conspiracy. . . .
>
> . . .
>
> THE COURT: What does you client want to do today?
>
> MR. O'KELLEY: It is represented to me, Your Honor, that the defendant would like to proceed with sentencing.

(*Id*. at 81-84, 88 [emphasis added].)

Clearly, defendant's statements – that he did not want the hearing because, even if successful, it would result in a sentence reduction of only a few months and because he was tired and "doing something wrong" – constitute a knowing and voluntary waiver of his right

---

[5] According the transcript of the proceedings, had the indictment been dismissed, defendant would have been reindicted. (Doc. 93 at 76.)

to challenge the loss amount. Although there may be circumstances in which waiver of the hearing would not have barred an appeal of the loss calculations, defendant's statements constitute a knowing and voluntary waiver – not only of a hearing on the loss amount, but also as to any error in the calculation of the loss amount. Also, the court notes that defendant has presented no evidence or argument that he was prejudiced by waiving his right to a hearing on the loss amount. The court told defendant it did not believe he could prove a loss amount that would change his sentence and, indeed, nothing in the record indicates that defendant would have been able to demonstrate a substantially lower amount of loss sufficient to reduce his sentence.

Therefore, the court finds that defendant has not shown that he is entitled to any relief from his sentence based on ineffective assistance of counsel with regard to advice to waive the hearing. His Motion for relief from his sentence will be denied as to this ground.

As to the other incidents of alleged ineffective assistance of counsel, defendant has not presented any evidence or argument that such conduct was incompetent and prejudicial. Therefore, defendant's Motion for relief from his sentence will be denied as to the remaining ineffective assistance of counsel grounds.

## C. BREACH OF THE PLEA AGREEMENT

Defendant alleges, "The government violated the plea agreement by failing to adhere to its contractual stipulation to resolve pending state charges against the defendant." (Doc. 104 at 5). As defendant recognizes in his Reply, the Government did not agree to "resolve"

any pending charges with state authorities, (doc. 116 at 6); rather it agreed to use its "best efforts" to "have any subsequent sentences which may come from his pleas of guilty to [the pending state charges] run concurrently with the sentence imposed by this court," (doc. 93 at 5). Defendant argues "the Government . . . only gave 'lip service' to this contractual obligation." (Doc. 116 at 7.)

As set forth above, defendant, as the petitioner, has the burden of proving "not merely that the errors [in the proceedings] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Although the breach of a plea agreement can constitute constitutional error under certain circumstances, *see Santobello v. New York*, 404 U.S. 257, 262 (1971), defendant has not shown that the Government breached the plea agreement by failing to use its best efforts to obtain concurrent sentences or that any alleged breach actually and substantially prejudiced defendant.

Therefore, the court finds that defendant is not entitled to relief from his sentence due to the Government's alleged breach of his plea agreement and his § 2255 Motion on this ground will be denied.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (doc. 104), is due to be denied. Defendant § 2255 action will be dismissed with prejudice.

**DONE**, this 23rd day of January, 2006.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE